UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| THE STATE OF NEVADA, DEPARTMENT OF EMPLOYMENT TRAINING AND REHABILITATION, ex. rel. Chagolla,<br><br>                Plaintiff,<br>v.<br>Lyft, Inc.,<br><br>                Defendant. | Case No. 3:23-cv-00442-ART-CLB<br><br>ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION OR ALTERNATIVELY FOR CERTIFICATION<br>(ECF Nos. 55, 56) |

Before the Court is Defendant Lyft, Inc.'s motion asking this Court to reconsider its order denying Lyft's motion to dismiss, or, in the alternative, to certify questions to the Nevada Supreme Court. (ECF Nos. 55, 56.) For the reasons stated below, the Court grants in part Lyft's motion for reconsideration, clarifies its prior ruling, and grants in part Lyft's motion for certification of questions to the Nevada Supreme Court.

I.  **Background**

This is a *qui tam* action brought by Plaintiff Christina Chagolla ("Relator"), a former driver for Lyft, alleging that Lyft violated the Nevada False Claims Act ("NFCA"), NRS 357.040(1)(g), which authorizes a reverse false claim where a person "[k]nowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State or a political subdivision." Relator alleges that Lyft knowingly misclassifies its drivers as independent contractors, thereby avoiding its obligation to pay unemployment taxes to the state of Nevada pursuant to NRS 612.085. Relator alleges that Lyft drivers cannot meet the requirements for the independent contractor exemption as outlined in NRS 612.085, and that Lyft did not seek an independent contractor exemption from Nevada's Department of Employment Training and Rehabilitation

1

1  ("DETR"). Specifically, Relator alleges that Lyft cannot satisfy NRS 612.085(1)
2  because "Relator and all other [Lyft] drivers in Nevada were not free from the
3  control and direction of Lyft in connection with the performance of the work," and
4  that Lyft cannot satisfy NRS 612.085(2) because Lyft is a transportation
5  company, and Relator is a driver for Lyft, without which "[Lyft] would not have a
6  business." (ECF No. 19 at 7, 8.) Because Lyft knowingly misclassifies its drivers,
7  Relator alleges, Lyft has "defrauded the state of Nevada by failing to pay monies
8  to the state of Nevada's unemployment compensation system," giving rise to a
9  reverse false claim under the NFCA, NRS 357.040(1)(g). (ECF No. 28 at 2.)

10        This case was originally filed in the Second Judicial District of Washoe
11  County, Nevada. (ECF No. 1-1.) Lyft then removed this case to federal court. (ECF
12  No. 1.) Lyft later filed a motion to dismiss Relator's first amended complaint. (ECF
13  No. 22.) Lyft made several arguments in support of its motion: (1) Relator's claim
14  is barred by the Nevada Supreme Court's holding in *International Game
15  Technology, Inc. v. Second Judicial District Court of Nevada*, 127 P.3d 1088 (Nev.
16  2006) (hereinafter "*IGT*"); (2) NRS 612.085 does not require businesses to seek a
17  prior exemption before engaging independent contractors; (3) the Court lacks
18  jurisdiction over Relator's claim under the NFCA's public disclosure bar; and (4)
19  Relator's claim does not meet the pleading requirements of Federal Rule of Civil
20  Procedure 9(b) because the complaint fails to allege a false statement. (ECF No.
21  22.) The Court ruled against Lyft as to each argument and denied its motion to
22  dismiss. (ECF No. 36.) Lyft now brings the instant motion to reconsider the
23  Court's order, and in the alternative to certify questions to the Nevada Supreme
24  Court.

25  **II.  Lyft's Motion for Reconsideration**
26      **A. Legal Standard**
27      A district court may reconsider an interlocutory order for cause, so long as
28  it retains jurisdiction. LR 59-1(a). Reconsideration may be appropriate if the

district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (citing *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)); *see also* LR 59-1(a).

### B. Analysis

Lyft requests reconsideration as to three of the arguments in its motion to dismiss. Lyft argues that the Court committed clear error when it (1) failed to decide whether *IGT* bars Relator's NFCA reverse false claim, and failed to "predict" how the Nevada Supreme Court would decide this question; (2) failed to decide whether there is an affirmative duty under NRS 612.085 to seek an independent contractor exemption from DETR; and (3) found that Relator plead a violation of the NFCA.

#### 1. Whether *IGT* Bars Relator's Claim

The Court will grant in part Lyft's motion to reconsider whether *IGT* bars Relator's claim. While the Court's order did decide that *IGT* does not bar Relator's claim, the Court did not "predict," as it does now, how the Nevada Supreme Court would decide this question. Because this question meets the standard for certification to the Nevada Supreme Court, the Court also grants Lyfts's alternative motion to certify this question. *See infra* section III.

When federal courts confront a state law issue without binding precedent, they must "predict how the state's highest court would decide" the question. *See Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007). While the Court's order held that *IGT* did not preclude the instant action, it now acknowledges that this is an open question because the Nevada Supreme Court has not directly spoken to this issue. The Court predicts that the Nevada Supreme Court would answer this question the same for three reasons: *IGT* and NRS 357.040(1)(g) permit reverse false claims based on tax liability; this case does not

involve, as *IGT* did, a request by the Nevada Attorney General to dismiss the NFCA action for good cause; and the question of whether Lyft owed unemployment taxes is one guided by Nevada statute and routinely decided by courts.

First, the Nevada Supreme Court in *IGT* explicitly stated that tax liability matters as a whole are not excluded from the scope of the NFCA. *IGT*, 127 P.3d at 1103–05 (citing inter alia NRS 357.040(1)(g)). The court in *IGT* held that the text of the NFCA contemplates that private relators may pursue reverse false claims based on tax liabilities:

> Nevada's FCA, in stark contrast to the federal legislation after which it was modeled, includes language allowing reverse false claims but omits any provision barring persons from bringing false claims actions based on tax liabilities.[] Thus, facially and otherwise, the inclusion of "obligations" within the FCA's scope, coupled with the omission of an express tax bar, conclusively demonstrates the Legislature's intent to include tax liability matters within the realm of possible false claims.

*Id.* at 1104 (omitting footnote citing to California's reverse false claims statute, which, like the federal statute, excludes tax liability claims). Though the NFCA has since been amended, the current version also does not bar reverse false claims based on tax liabilities.[1]

Second, *IGT* focused on a specific procedural context, namely the Nevada Attorney General's request to dismiss the NFCA claim for "good cause." There,

---

[1] In *IGT*, the Nevada Supreme Court construed the prior version of NRS 357.040(1)(g), which was amended in 2013. Prior to the amendment, NRS 357.040(1)(g) required proof that the person knowingly made or used "a false record or statement." *IGT*, 127 P.3d at 1102 (quoting prior version of NRS 357.040(1)(g) (1999) (providing that a reverse false claim arises when a person "[k]nowingly makes or uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State or a political subdivision")). After the 2013 amendments, NRS 357.040(1)(g) now provides that a reverse false claim arises if a person "[k]nowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State or a political subdivision."

4

the Attorney General intervened in the case and moved to dismiss the action, which the lower court denied. *Id.* at 1095–96. On appeal, the Nevada Supreme Court's analysis focused on the "good cause" standard for dismissal, which requires an Attorney General to show that "the dismissal is rationally related to a legitimate government purpose." *Id.* at 1100–01. The Nevada Supreme Court held that there was good cause for dismissal based on the Attorney General's "showing that the resolution of a false claims action requires a factual evaluation of, or legal interpretation of, the revenue statutes." *Id.* at 1108. Here, the Attorney General was notified of the action filed in state court and did not intervene, so there is no request by the Attorney General to dismiss for good cause. Rather, the request for dismissal comes from the *defendant* under the Rule 12(b)(6) failure to state a claim standard. Though Lyft argues that *IGT* requires dismissal under 12(b)(6), the Court is not aware of any case law applying *IGT* in this way. Allowing a defendant to dismiss an NFCA tax liability claim under *IGT* would therefore extend, not simply follow, the holding in *IGT*.

Third, nothing in *IGT* or NRS 612.085 precludes the Court from deciding whether Lyft meets the independent contractor exemption under NRS 612.085. While Lyft argues that this question must be decided in the first instance by DETR, NRS 612.085 provides the requisite legal test. The default rule under NRS 612.085 is an employment relationship. NRS 612.085 ("Services performed by a person for wages *shall be deemed to be employment unless . . .*") (emphasis added). The independent contractor exemption, a three-part test codified in NRS 612.085, is modeled on the "ABC" test. *See* Robert Sprague, *Using the ABC Test to Classify Workers: End of the Platform-Based Business Model or Status Quo Ante?*, 11 Wm. & Mary Bus. L. Rev. 733, 748 n.63 (2020). This is a common test which state and federal courts regularly apply. *See People v. Uber Techs., Inc.*, 270 Cal. Rptr. 3d 290, 289 (2020), *as modified on denial of reh'g* (Nov. 20, 2020) (applying California's statutory ABC test); *Salinas v. Cornwell Quality Tools Co.*, 635 F.

Supp. 3d 979, 990–92 (C.D. Cal. 2022) (same); *Sportsman v. A Place for Rover, Inc.*, 537 F. Supp. 3d 1081, 1090–99 (N.D. Cal. 2021) (same); *Portillo v. Nat'l Freight, Inc.*, 606 F. Supp. 3d 72, 90–94 (D.N.J. 2022) (applying New Jersey's statutory ABC test). The Nevada Supreme Court has engaged in similar analysis in analyzing independent contractor versus employment status in the context of wage and hour laws. *See Doe Dancer I v. La Fuente, Inc.*, 481 P.3d 860, 868–70 (Nev. 2021) (applying "economic realities" test to determine if workers were independent contractors); *Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 958–60 (Nev. 2014) (same). The legal test supplied by NRS 612.085 is one routinely applied by courts and nothing in the statute appears to bar courts from applying it in the first instance.

For these reasons, the Court predicts that the Nevada Supreme Court would decide that neither *IGT* nor NRS 612.085 bars the present action. The Court also finds this question appropriate for certification, as discussed below in section III.

### 2. Whether There is an Affirmative Duty Under NRS 612.085 to Seek an Independent Contractor Exemption from DETR

Lyft argues that the Court's order failed to determine whether there is an affirmative duty to seek an independent contractor exemption from DETR under NRS 612.085, and failed to predict how the Nevada Supreme Court would decide this question. The Court declines to reconsider this issue because the Court did not commit clear error. The Court's order held that whether there is an affirmative duty under NRS 612.085 to seek an independent contractor exemption was not dispositive of Lyft's motion. Rather, even if there is no affirmative duty to do so, Relator still alleged that Lyft cannot meet the requirements for an independent contractor exemption under NRS 612.085, giving rise to an obligation to pay unemployment taxes, and that Lyft knowingly failed to do so, which is sufficient to state a reverse false claim under the NFCA. The Court therefore did not commit

clear error in not deciding this question.

### 3. Whether Relator Plead a Violation of the NFCA

Finally, Lyft argues that the Court committed clear error when it found that Relator plead a claim under the NFCA, even though Relator's complaint did not allege that Lyft fails all three prongs of the independent contractor exemption test under NRS 612.085. This argument is based on a misconception of the test under NRS 612.085. Under NRS 612.085, services are deemed to be employment unless all three prongs of the test are met. *See State Dep't of Emp., Training & Rehab., Emp. Sec. Div. v. Reliable Health Care Servs. of S. Nevada, Inc.*, 983 P.2d 414, 417 (Nev. 1999). Put another way, if an employing unit fails just one prong of the test, the services are deemed to be employment, subject to unemployment taxes. Therefore, the allegations in Relator's complaint that Lyft fails the first two prongs of the test, NRS 612.085(1) and (2), are adequate to allege that Lyft cannot meet the independent contractor exemption.

### III. Lyft's Alternative Motion for Certification

Under Nevada Rule of Appellate Procedure 5(a), the Nevada Supreme Court may answer questions of law certified to it by a United States District Court "which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court or Court of Appeals of this state." Generally, "[i]f the state's highest appellate court has not decided the question presented, [a federal court] must predict how the state's highest court would decide the question." *High Country Paving, Inc. v. United Fire & Cas. Co.*, 14 F.4th 976, 978 (9th Cir. 2021). "However, if state law permits, [a federal court] may exercise [its] discretion to certify a question to the state's highest court." *Id.* In deciding whether to certify a question to a state's highest court, a federal court should consider: "(1) whether the question presents 'important public policy ramifications' yet unresolved by the state court; (2) whether the issue is new,

substantial, and of broad application; (3) the state court's caseload; and (4) 'the spirit of comity and federalism.'" *Id.* (quoting *Kremen v. Cohen*, 325 F.3d 1035, 1037–38 (9th Cir. 2003)).

The Court finds that the question of whether the holding in *IGT* bars Relator's reverse false claim action—outside of the context of an Attorney General's request to dismiss for good cause—is an unsettled question of state law which is entirely dispositive of this case. This question also presents important and potentially broad public policy ramifications. Whether this type of action is barred by *IGT* bears significantly on the issue of under what circumstances a relator may bring a reverse false claim action under the NFCA for a failure to pay unemployment taxes.

Rule 5 also provides that a certification order must specifically address the following requirements:

1) The questions of law to be answered;
2) A statement of all facts relevant to the questions certified, identify any facts that are in dispute;
3) The nature of the controversy in which the questions arose;
4) A designation of the party or parties who will be the appellant(s) and the party or parties who will be the respondent(s) in the Supreme Court;
5) The names and addresses of counsel for the appellant and respondent;
6) A brief statement explaining how the certified question of law may be determinative of the cause then pending in the certifying court;
7) A brief statement setting forth relevant decisions, if any, of the Supreme Court and the Court of Appeals and the reasons why such decisions are not controlling; and
8) Any other matters that the certifying court deems relevant to a determination of the questions certified.

Nev. R. App. P. 5(c). The Court will address each of these requirements below.

8

First, the question of law to be answered is whether *IGT* bars the instant action under the NFCA alleging Lyft knowingly failed to pay unemployment taxes, specifically:

> Relator sues Defendant Lyft alleging that it has an obligation to pay unemployment taxes under NRS 612.085 and knowingly failed to do so. *International Game Technology, Inc. v. Second Judicial District Court of Nevada* ("*IGT*") held that where an Attorney General requests to dismiss an action under the NFCA, a showing that the resolution of the action requires a factual evaluation under or legal interpretation of the revenue statutes constitutes "good cause" for such dismissal. 127 P.3d 1088, 1108 (Nev. 2006). Defendant Lyft argues that *IGT* requires dismissal of this action, although the Attorney General has neither intervened nor moved to dismiss for "good cause." Does *IGT* require dismissal of this action?

While Lyft has moved for certification of several other questions, the Court finds that those questions are not "determinative of the cause pending." Nev. R. App. P. 5(a).

Second, all relevant facts are set forth above, and no relevant facts are in dispute because all allegations are to be taken as true at this stage of the litigation.

Third, the nature of the controversy is set forth above.

Fourth, the moving Defendant is designated as the Appellant, and Plaintiff/Relator is designated as the Respondent.

Fifth, the names and addresses of counsel are as follows:

**Counsel for the moving Defendant:**
Jeremy S. Schneider
Jackson Lewis P.C.
11790 Sunrise Valley Drive
Suite 400
Reston, VA 20191

Joshua A Sliker
Jackson Lewis P.C.
300 S. Fourth Street
Suite 900
Las Vegas, NV 89101

Kirsten Ann Milton
Jackson Lewis PC
Bank of America Plaza
300 S. Fourth Street, Suite 900
Las Vegas, NV 89101

Matthew Eric Kreiser
Jackson Lewis P.C.
11790 Sunrise Valley Drive
Ste 400
Reston, VA 20191

**Counsel for the Plaintiff (Relator)**
Joshua D Buck
Thierman Buck LLP
325 W Liberty Street
Reno, NV 89501

Leah Lin Jones
Thierman Buck LLP
325 W Liberty Street
Reno, NV 89501

Mark R. Thierman
Thierman Buck LLP
325 W Liberty Street
Reno, NV 89501

**Co-Counsel for the Plaintiff (Relator)**
Joshua R. Hendrickson
Hendrickson Law Group, PLLC
325 W. Liberty St.
Reno, NV 89501

Sixth, whether the Supreme Court's holding in *IGT* bars Relator's claim under NRS 357.040(1)(g) is dispositive of Relator's claim.

Seventh, neither the parties nor this Court have identified any decisions from the Nevada Supreme Court or the Nevada Court of Appeals that have addressed the question of whether the holding in *IGT* applies in this context.

Eighth, all other elaboration upon the certified question is included in this Order.

**IV. Conclusion**

It is therefore ordered that Lyft's motion for reconsideration (ECF No. 55) is GRANTED IN PART.

It is further ordered that Lyft's motion for certification (ECF No. 56) is GRANTED IN PART. As described in this Order, the Court CERTIFIES a question of law to the Nevada Supreme Court pursuant to Rule 5 of the Nevada Rules of Appellate Procedure.

It is further ordered that the Clerk of the Court shall forward a copy of this Order to the Clerk of the Nevada Supreme Court under the official seal of the United States District Court for the District of Nevada. *See* Nev. R. App. P. 5(d).

Dated this 2nd day of July 2025.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE